**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JORDAN SCHNUR, | : |
| | : |
| Plaintiff, | : |
| | :     Civil Action No. 2:22-CV-01621 |
| vs. | : |
| | : |
| JETBLUE AIRWAYS CORPORATION, | : |
| | : |
| Defendant. | : |

**DEFENDANT JETBLUE AIRWAYS CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 4

      A.     JetBlue's Disclosures on the JetBlue.com Website ................................ 4
      B.     Plaintiff Jordan Schnur's Interactions With the Website and His Claims ............. 5

III.    THIS COURT LACKS PERSONAL JURISDICTION OVER JETBLUE ..................... 6

      A.     Standard for Motions to Dismiss Pursuant to Rule 12(b)(2) .................. 6
      B.     The Court Does Not Have Specific Jurisdiction Over JetBlue ............................ 6

IV.    PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE ADA ........................................ 10

      A.     Preemption Under the Airline Deregulation Act ................................... 10
      B.     Plaintiff's Claims are Preempted ........................................................ 11

V.     PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT ................. 12

      A.     Constitutional Requirements for Standing ........................................... 12
      B.     Plaintiff Has Not Established a Concrete Harm ................................... 13

VI.    PLAINTIFF HAS FAILED TO STATE A CLAIM ........................................... 15

      A.     Standard for Ruling on Motions to Dismiss Pursuant to Rule 12(b)(6) .............. 15
      B.     Plaintiff Fails to Allege a Plausible Violation of PWESCA ................................ 16

            1.     Session Replay Software is Not a Device Under PWESCA ..................... 16
            2.     Plaintiff Did Not Allege That JetBlue Captured Any "Contents." ........... 18
            3.     Plaintiff Has Not Alleged an Interception. ......................................... 19
            4.     Plaintiff Had No Reasonable Expectation of Privacy. ........................... 21
            5.     JetBlue Was a Direct Recipient of Plaintiff's Communications. .............. 21

      D.     Plaintiff Fails to Plausibly Allege Intrusion Upon Seclusion ............................. 22
      E.     Plaintiff Consented to JetBlue's Recording ........................................ 23

VII.   CONCLUSION ..................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Am. Airlines, Inc.*,
   370 F. Supp. 2d at 564 .......................................................................................11, 12

*Am. Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995)....................................................................................................11

*Antman v. Uber Techs., Inc.*,
   No. 3:15-cv-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015)...................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................15, 16

*Barclift v. Keystone Credit Services, LLC*,
   5:21-CV-04335, 2022 WL 1102122 (E.D. Pa. Apr. 13, 2022).................................14

*Bomberger v. Am. Airlines, Inc.*,
   No. CV 17-5298, 2018 WL 3416386 (E.D. Pa. July 12, 2018)...........................7, 8

*Calder v. Jones*,
   465 U.S. 783 (1984).......................................................................................................6

*Cardoso v. Whirlpool Corp.*,
   2021 WL 2820822 (S.D. Fla. July 6, 2021)...............................................................17

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................................................18

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)..................................................................................................15

*Connor v. Whirlpool Corp.*,
   2021 WL 3076477 (S.D. Fla. July 6, 2021)...............................................................17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).......................................................................................................6

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
   948 F.3d 124 (3d Cir. 2020).........................................................................................6

*David v. United Cont'l Holdings, Inc.*,
   2015 WL 7573204 (D.N.J. Nov. 24, 2015) ...............................................................10

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*,
   276 F. Supp.3d 324 (E.D. Pa. 2017) ..........................................................................3

*Fraser v. Nationwide Mut. Ins. Co.*,
   352 F.3d 107 (3d Cir. 2003)....................................................................................3, 19

*Gabriel v. Giant Eagle, Inc.*,
   124 F. Supp. 3d 550 (W.D. Pa. 2015).................................................................22, 23

*Gary v. Air Group, Inc.*,
    397 F.3d 183 (3d Cir. 2005) ........................................................................................10, 11

*Goldstein v. Costco Wholesale Corp.*,
    559 F. Supp. 3d 1318 (S.D. Fla. 2021) .....................................................................19, 21, 23

*Goldstein v. Luxottica of Am., Inc.*,
    No. 21-CV-80546, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ...................................17, 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ...............................................................................................................7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) ................................................................................................13

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................................................19

*Gupta v. Wipro Ltd.*,
    749 F. App'x 94 (3d Cir. 2018) ...........................................................................................16

*Hadnagy v. Moss*,
    No. 22-CV-3060, 2023 WL 114689 (E.D. Pa. Jan. 5, 2023) ..................................................8

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
    846 F.3d 625 (3d Cir. 2017) ................................................................................................13

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ..............................................................................................7, 9

*Jevic v. Coca Cola Bottling Co. of N.Y., Inc.*,
    No. 89-CV-4431, 1990 WL 109851 (D.N.J. June 6, 1990) ..................................................23

*Kim v. Korean Air Lines Co.*,
    513 F. Supp. 3d at 470-71 .................................................................................................7, 8

*Kislov v. Am. Airlines, Inc.*,
    No. 17 C 9080, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022) ...........................................11, 12

*Klumb v. Goan*,
    884 F. Supp. 2d 644 (E.D. Tenn. 2012) ..............................................................................18

*LaSala v. Marfin Popular Bank Pub. Co.*,
    410 F. App'x 474 (3d Cir. 2011) ...........................................................................................9

*LCV Cap. Mgmt., LLC v. Nuova Argo Finanziaria S.p.A.*,
    18-CV-01645, 2021 WL 716728 (W.D. Pa. Feb. 24, 2021) ..................................................6

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015) ....................................................................................................2

*Lindsay-Stern v. Garamszegi*,
    No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948 (C.D. Cal. Oct. 13,
    2016) ...................................................................................................................................20

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) ..............................................................................................18

*Malone v. Weiss*,
2018 WL 827433 (E.D. Pa. 2018) ........................................................................................25

*Maryland v. Macon*,
472 U.S. 463 (1985)...................................................................................................3, 23

*Mason v. Machine Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015) .......................................................................................17

*Massie v. Gen. Motors LLC*,
No. 21-CV-787, 2022 WL 534468 (D. Del. Feb. 17, 2022)...........................................14, 15

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)........................................................................................................10

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)...............................................................................................16

*Nationwide Prop. & Cas. Ins. Co. v. Rockford Com. Warehouse, Inc.*,
2:18-CV-01458-RJC, 2020 WL 2042331 (W.D. Pa. Apr. 28, 2020) .......................................9

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)...........................................................................................4

*Nyanhongo v. Credit Collection Services*,
CV 20-6380, 2021 WL 1546233 (E.D. Pa. Apr. 20, 2021) ...................................................14

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007)...........................................................................................7

*Pacitti v. Durr*,
No. 05-CV-317, 2008 WL 793875 (W.D. Pa. Mar. 24, 2008), *aff'd*, 310 F.
App'x 526 (3d Cir. 2009) ...........................................................................................3, 22, 23

*Panitch v. Cont'l Airlines*,
No. CIV.A 06-3611, 2008 WL 906240 (D.N.J. 2008) ...........................................................10

*Patchen v. McGuire*,
Case No. CV 11–5388, 2012 WL 4473233 (E.D. Pa. Sept. 27, 2012)...................................9

*Phila. Metal Trades Council v. Konnerud Consulting W., A.S.*,
No. 15-CV-5621, 2016 WL 1086709 (E.D. Pa. Mar. 21, 2016).........................................13

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019)...................................................................................18

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ...........................................................................2, 18, 22, 24, 25

*Potter v. Havlicek*,
No. 06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008) .......................................3, 17

*Quigley v. Yelp, Inc.*,
No. 17-cv-03771, 2018 WL 7204066 (N.D. Cal. 2018)...........................................................20

*Realogichr, LLC v. Cont'l Cas. Co.*,
No. 22-CV-01573, 2022 WL 17904245 (W.D. Pa. Dec. 23, 2022) ...................15, 16, 19, 23

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001)........................................................................................2, 8, 9

*Rittinger v. Keystone Maint. Servs. Corp.*,
  2018 WL 3455856 (M.D. Pa. Jul. 18, 2018)............................................................................7

*Rodriguez v. Google LLC*,
  No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022).....................................20

*Rosenow v. Facebook, Inc.*,
  No. 19-cv-1297, 2020 WL 1984062 (S.D. Cal. 2020)..........................................................20

*Shefts v. Petrakis*,
  No. 10-CV-1104, 2012 WL 4049484 (C.D. Ill. Sept. 13, 2012) ...........................................18

*Shuker v. Smith & Nephew, PLC*,
  885 F.3d 760 (3d Cir. 2018)....................................................................................................8

*Sieg v. Sears Roebuck & Co.*,
  855 F. Supp. 2d 320 (M.D. Pa. 2012) .....................................................................................6

*Smith v. Maryland*,
  442 U.S. 735 (1979)...............................................................................................................21

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)......................................................................................................12, 13

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003).....................................................................................................8

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).................................................................................................3, 13, 14

*United States v. Barrington*,
  648 F.3d 1178 (11th Cir. 2011) .......................................................................................17, 18

*United States v. Steiger*,
  318 F.3d 1039 (11th Cir. 2003) .............................................................................................19

*Verotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.*,
  75 F.3d 147 (3d Cir. 1996)......................................................................................................6

*Walden v. Fiore*,
  571 U.S. 277 (2014)...............................................................................................................10

*White v. U.S. Govt. Dept.*,
  969 F. Supp. 323 (1997) ........................................................................................................14

*Yaw v. Delaware River Basin Comm'n*,
  49 F. 4th 302 (3d Cir. 2022) ..................................................................................................13

**State Cases**

*Commonwealth v. Byrd*,
  235 A.3d 311 (Pa. 2020) .......................................................................................21, 23, 24, 25

*Commonwealth v. Diego*,
   119 A.3d 370 (Pa. Super. Ct. 2015) .................................................................22, 25

*Commonwealth v. Gamby*,
   283 A.3d 298 (Pa. 2022) ...............................................................................17, 18

*Commonwealth v. Hart*,
   28 A.3d 898 (Pa. 2011) ..................................................................................16, 17

*Commonwealth v. Proetto*,
   771 A.2d 823 (Pa. Super. 2001), *aff'd*, 837 A.2d 1163 (Pa. 2003).......................20, 21, 22, 25

*People ex rel. Harris v. Delta Air Lines, Inc*.,
   247 Cal. App. 4th 884 (2016) .......................................................................2, 11, 12

*Harris ex rel. Harris v. Easton Pub. Co.*,
   483 A.2d 1377 (Pa. Super. 1984).........................................................................22

*Jacome v. Spirit Airlines Inc.*,
   2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ................................................3, 4, 17, 19, 25

*Waste Mgmt. of N.J., Inc. v. Mercer Cnty. Imp. Auth.*,
   No. A-2287-12T3, 2014 WL 6390571 (N.J. Super. Ct. App. Div. Nov. 18,
   2014) .............................................................................................................23

## Federal Statutes

18 U.S.C. § 2510(4) .......................................................................................18, 19

49 U.S.C. § 41713(b)(1) ...................................................................................2, 10

U.S.S.G. § 2B1.1(b)(10)(B) ................................................................................17

## State Statutes

18 Pa. Cons. Stat. § 5701, *et seq.* .......................................................................1, 3

18 Pa. Cons. Stat. § 5702 ............................................................................3, 16, 18, 19

18 Pa. Cons. Stat. § 5703 .................................................................................16

18 Pa. Cons. Stat. § 5704(4) ..............................................................................23

## I.     __INTRODUCTION__

Plaintiff Jordan Schnur attempts, for the second time, to allege privacy claims over information he knowingly and voluntarily provided on www.jetblue.com. Plaintiff claims that he visited www.jetblue.com (the "Website") to browse for flights to and from Pittsburgh. During that visit, he alleges, JetBlue used software to collect his "mouse movements, clicks, keystrokes . . ., URLs of web pages visited, and/or other electronic communications." First Amended Complaint ("FAC") ¶¶ 1, 54, 69. He claims that JetBlue's collection of these innocuous interactions with the use of software provided by FullStory invaded his privacy and constituted an unlawful wiretap in violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* (the "PWESCA"). This is one of *thirteen* cases that Plaintiff's counsel filed in the last seven months with *verbatim* identical allegations based on a website operator's alleged collection of innocuous information plaintiffs voluntarily provided. Request for Judicial Notice ("RJN"), Exs. 7-18. Plaintiff's cut-and-paste pleading underscores the lack of merit to his claims.

JetBlue previously presented judicially-noticeable documents showing that *before* Plaintiff could access the Website, he expressly consented to any recording of his data. Upon navigating to the Website, Plaintiff was presented with a pop-up banner that he was *required* to acknowledge before he could use the Website. The banner stated: "We value your privacy. We use cookies to provide a user-friendly experience, analyze website traffic and offer you personalized advertising. To learn more about cookies, view our Cookie policy. By clicking 'Accept all cookies', you consent to the use of all cookies, unless you have disabled them." RJN, Ex. 1. Plaintiff was required to click to either "Accept all cookies" or "Manage cookies" before the Website was accessible. Assuming JetBlue recorded his website interactions with FullStory's software, that could have *only* occurred because he elected to not turn the recording off through this banner. The Third Circuit has already determined that a plaintiff's consent to recording is a complete bar to his claims

1

under PWESCA. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022).

Brazenly, in response to these facts, Plaintiff amended his complaint to assert—with no facts in support—that JetBlue's banner was only placed *after* the lawsuit was filed. FAC ¶ 72; *see* Motion to Dismiss, ECF No. 21 at 4. This allegation, manufactured solely to attempt to avoid dismissal of his claims, is improperly alleged on "information and belief" and is not presumed true. *See, e.g.*, *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015). Nonetheless, his claims remain subject to dismissal on multiple grounds.

**First**, JetBlue is not subject to personal jurisdiction in Pennsylvania. The only connection that Plaintiff alleges between his claims against JetBlue and Pennsylvania is his unilateral decision to use the Website, which is not targeted to Pennsylvania but available around the world. *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001). Plaintiff's claims—based on the alleged recording of his voluntary interactions on the Website—do not arise from or relate to JetBlue's "Pennsylvania flight offerings," especially because Plaintiff claims he never purchased a flight on the Website. FAC ¶¶ 9, 57.

**Second**, Plaintiff's claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA"). Preemption under the ADA is broad in scope and extends to any state law claim "related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). Courts around the country have held that state privacy claims arising from the information an air carrier collects in the course of providing ticketing and reservation services, as Plaintiff asserts occurred here, FAC ¶¶ 56-59, are preempted. *E.g.*, *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884 (2016).

**Third**, Plaintiff has not and cannot establish an Article III injury in fact. He alleges only a bare procedural violation of PWESCA, without any accompanying harm, which is insufficient to

maintain suit in federal court. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

**Fourth**, Plaintiff has failed to state a plausible claim under PWESCA. PWESCA only prohibits the unauthorized acquisition of the *contents* of a communication, in which a plaintiff had a *reasonable expectation of privacy*, while the communication is *contemporaneously transmitted*, and with the use of an unlawful *device*. *See* 18 Pa. Cons. Stat. § 5701, *et seq.* Courts around the country have held that software—which Plaintiff contends JetBlue used to capture his interaction with the Website—is not a "device" under wiretapping statutes. *E.g.*, *Potter v. Havlicek*, No. 06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008). The "mouse movements, clicks, keystrokes . . . URLs of web pages visited, and/or other electronic communications," FAC ¶ 1, that Plaintiff claims JetBlue acquired have been uniformly rejected as non-actionable non-contents. 18 Pa. Cons. Stat. § 5702; *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021). Plaintiff not only fails to allege with non-conclusory facts that JetBlue acquired his communications contemporaneously with transmission, but he concedes that JetBlue acquired communications from a server, which is not an acquisition at the time of transmission as PWESCA requires. FAC ¶ 25, 47; *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003). Finally, Plaintiff cannot plausibly allege an expectation of privacy in non-substantive data that he voluntarily provided on a commercial website and that he expected JetBlue to receive to provide him t flight information. *Maryland v. Macon*, 472 U.S. 463, 469 (1985).

**Fifth**, Plaintiff has not alleged a claim for intrusion upon seclusion. He has no expectation of privacy in his communications on the Website. *Doe ex rel. Doe* v. *Boyertown Area Sch. Dist.*, 276 F. Supp.3d 324, 404 (E.D. Pa. 2017). He also does not allege that the non-substantive data JetBlue acquired would be highly offensive to an ordinary person. *Pacitti v. Durr*, No. 05-CV-317, 2008 WL 793875, at *26 (W.D. Pa. Mar. 24, 2008), *aff'd*, 310 F. App'x 526 (3d Cir. 2009).

**Finally**, Plaintiff's consent bars his claims. Before Plaintiff could use the Website, he expressly clicked his assent to JetBlue's use of cookies, including the FullStory software from which his claims arise, to record his website interactions as disclosed in its Privacy Policy. *Jacome*, 2021 WL 3087860, at *7.

## II.    FACTUAL BACKGROUND

### A.    JetBlue's Disclosures on the JetBlue.com Website

When a visitor directs his or her web browser to the Website, JetBlue prominently displays a banner in the center of the screen that states:



RJN, Ex. 1. This banner is displayed in white while the remainder of the Website is greyed-out. *Id*. A visitor *must* acknowledge the banner—either by clicking "Manage cookies" or "Accept all cookies"—before the visitor can interact with the Website in any way. *Id*. If a visitor selects "Manage cookies," the visitor is directed to a screen where he or she may select from a list of cookies that the visitor can turn off or on. *Compare* RJN, Ex. 2; *with* FAC ¶ 72; *see also* RJN, Ex. 6.[1]. Under the heading "Functional Cookies," a drop-down menu expressly informs visitors that JetBlue uses the "FullStory" cookie to "capture . . . customer experience data . . . ." RJN, Ex. 3. A visitor who elects to "Manage cookies" *must* click a button to "Submit preferences," either opting in or opting out of the use of FullStory, before he or she can proceed to use the Website. *Id*.

---

[1] "An Internet 'cookie' is a small text file that a web server places on a user's computing device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016).

JetBlue's Privacy Policy linked in the banner (and the bottom of every page) informs visitors that JetBlue collects information "about your interactions" through the use of technology, "including information about your browsing and activity behavior," "information you provide when you . . . book a flight," and "pages viewed [and] information searched for." RJN, Ex. 4 at 3.

**B.    Plaintiff Jordan Schnur's Interactions With the Website and His Claims**

Plaintiff alleges that he visited the Website from his computer in Pennsylvania at a date that he only identifies as "prior to the filing of this action." FAC ¶¶ 53, 54. Plaintiff describes session replay software as code "implemented on www.jetblue.com" that allows JetBlue to "record, save, and replay website visitors' interactions with a given website." FAC ¶ 23. Plaintiff contends that session replay software allows a website operator to capture "virtually every user action" on a site, such as "mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, . . . numerous other form[s] of a user's navigation and interaction through the website," and "touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, networks requests, and more." FAC ¶¶ 26, 47.

Plaintiff concedes that he made no purchase during his visit and only browsed for flights. *Id*. ¶¶ 56-57. He does not describe any information he input into any fields on the Website—only that he clicked and hovered over flight options. *See id*. ¶¶ 54-57. Plaintiff does not claim, because it is not true, that he did not intend to provide this information to JetBlue or intend that JetBlue would use the information to display possible flight options in response to him. Plaintiff's counsel has made verbatim identical allegations—only swapping in different plaintiffs, defendants, and screenshots—in twelve other suits alleging wiretapping claims based on website operators' alleged use of session replay within the last seven months. RJN, Exs. 7-18.

Plaintiff claims, based on "information and belief," that JetBlue had no banner disclosing its use of cookies prior to the filing of his lawsuit. RJN, Ex. 3; FAC ¶ 72. But if he in fact visited

the Website before filing suit, he need not rely on information and belief to assert the banner was absent—if this were true (which it isn't) he could state that it was absent from his own experience.

## III.   THIS COURT LACKS PERSONAL JURISDICTION OVER JETBLUE

### A.   Standard for Motions to Dismiss Pursuant to Rule 12(b)(2)

Plaintiff bears the burden of establishing personal jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). "Once a challenge to personal jurisdiction has been raised, the plaintiff has the burden of establishing jurisdictional facts through sworn affidavits or other competent evidence." *LCV Cap. Mgmt., LLC v. Nuova Argo Finanziaria S.p.A.*, 18-CV-01645, 2021 WL 716728, at *4 (W.D. Pa. Feb. 24, 2021). When ruling on a motion to dismiss for lack of personal jurisdiction, a court must accept the complaint's factual allegations as true, *LCV Cap. Mgmt.*, 2021 WL 716728, at *4, but not its legal conclusions, *see Sieg v. Sears Roebuck & Co.*, 855 F. Supp. 2d 320, 327 n.3 (M.D. Pa. 2012).

### B.   The Court Does Not Have Specific Jurisdiction Over JetBlue[2]

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant should reasonably expect being haled into court" in that forum. *Verotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.*, 75 F.3d 147, 151 (3d Cir. 1996). For allegedly intentional torts (FAC ¶¶ 69, 95, 110), the Third Circuit applies the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984):

> First, the defendant must have committed an intentional tort.
>
> Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort.
>
> Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

---

[2] Plaintiff does not contend that JetBlue is subject to general jurisdiction in Pennsylvania. FAC ¶ 6; *see Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998).

Plaintiff has not and cannot establish the "express aim[ing]" element necessary to show specific personal jurisdiction. For express aiming, Plaintiff must "point to specific activity indicating that" JetBlue "expressly aimed" its allegedly "*tortious* conduct" at Pennsylvania, and that JetBlue "*knew*" that Plaintiff "would suffer the brunt of the harm" in Pennsylvania to satisfy *Calder*. *IMO Indus., Inc.*, 155 F.3d at 259-60 (emphasis added). Plaintiff attempts to link JetBlue's activity to Pennsylvania by alleging that JetBlue offers "numerous flights to and from locations in Pennsylvania," and "chose to avail itself of the business opportunities of marketing and selling its services in Pennsylvania . . . ." FAC ¶¶ 8-9. But JetBlue's conduct unrelated to any alleged wiretapping is irrelevant to whether the Court has personal jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (specific jurisdiction confined to issues connected to "the very controversy" that purportedly establishes jurisdiction). JetBlue operating "586 flights to [the Philadelphia International Airport]" or "237 flights to [the Pittsburgh International Airport]" each month cannot confer specific jurisdiction because Plaintiff's claims do not arise from these physical operations. FAC ¶ 9; *Rittinger v. Keystone Maint. Servs. Corp.*, 2018 WL 3455856, at *7-8 (M.D. Pa. Jul. 18, 2018) (no specific jurisdiction where plaintiff alleged certain parts were shipped into Pennsylvania but "none of [those] parts [were] related to any claims in th[e] case"). "[T]he mere fact that Defendant has planes that depart from, and land in, the forum state does not mean that Defendant 'deliberately reached into Pennsylvania to target two of its citizens.'" *Bomberger v. Am. Airlines, Inc.*, No. CV 17-5298, 2018 WL 3416386, at *2 (E.D. Pa. July 12, 2018) (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). Plaintiff, in fact, concedes that he never "end[ed] up purchasing flights on his visits" to the Website, so JetBlue's alleged flights to and from Pittsburgh are literally irrelevant. FAC ¶ 57; *see Kim v.*

*Korean Air Lines Co.*, 513 F. Supp. 3d at 470-71 (no specific jurisdiction over claims arising from in-flight activities only connected to New Jersey by plaintiff's purchase of an airline ticket online within the state); *Bomberger*, 2018 WL 3416386, at *2-*3 (plaintiff's purchase of airline ticket in Pennsylvania for a trip that commenced and ended in Philadelphia did not establish personal jurisdiction for claims based on airline's alleged negligence during flight).

JetBlue's globally-available Website does not establish express aiming either. Plaintiff claims that JetBlue's conduct was directed towards Pennsylvania because JetBlue "knew that its practices would directly result in collection of information from Pennsylvania citizens while those citizens browse www.jetblue.com from devices located in Pennsylvania." FAC ¶ 8. But "'[t]he mere operation of a commercially interactive web site' does not confer jurisdiction wherever that website may be accessed." *Kim*, 513 F. Supp. 3d at 470-71 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)). Courts have uniformly rejected the proposition that "publish[ing] [information] on the Internet," even if it is "accessible and widely disseminated," is sufficient to establish personal jurisdiction absent "facts to support the theory that the [information] was *specifically circulated or concentrated in Pennsylvania*"—which Plaintiff does not allege, and is not true. *Hadnagy v. Moss*, No. 22-CV-3060, 2023 WL 114689, at *7 (E.D. Pa. Jan. 5, 2023) (emphasis added); *see Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) ("Given that the website was intended to provide information . . . accessible worldwide, there is no basis to conclude that the defendants expressly aimed their allegedly tortious activity at Pennsylvania"). JetBlue's Website plainly shows that it is aimed at an audience that is not just nationwide in its scope, but *global*. *See* RJN, Ex. 5, Indeed, as Plaintiff alleges, JetBlue's Website offers flights to "more than a hundred destinations domestically and internationally." FAC ¶ 43; *see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) ("nationally directed efforts" "to exploit a national

market" that "necessarily include[s] Pennsylvania," do not establish purposeful availment).

Similarly, Plaintiff's claim that JetBlue "knew" Pennsylvania's citizens interact with its website does not establish personal jurisdiction either. FAC ¶ 10. "[F]oreseeability of harm being suffered in a forum is insufficient to establish personal jurisdiction under *Calder*." *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 477 (3d Cir. 2011). Plaintiff alleges no facts that JetBlue "knew" Plaintiff "would suffer the brunt of the harm" in Pennsylvania. *Manfredy*, 238 F.3d at 259 (no knowledge of harm in Pennsylvania where website at issue was "accessible worldwide").. Plaintiff alleges that JetBlue uses session replay to allegedly monitor interactions of "the millions of individuals perusing JetBlue's website" for its flights that "serve more than a hundred destinations domestically and internationally," which confirms that his claims do not arise from conduct directed to Pennsylvania. FAC ¶¶ 43, 44.

Personal jurisdiction is also absent under the alternative test for non-intentional torts. Under the alternative test, the Court must determine whether (1) the defendant "purposefully availed itself of the privilege of conducting its activities within the forum [state]," and whether (2) the plaintiff's claim "is related to or arises out of" the defendant's forum contacts. *IMO Indus.*, 155 F.3d at 259 & n.3; *see Nationwide Prop. & Cas. Ins. Co. v. Rockford Com. Warehouse, Inc.*, 2:18-CV-01458-RJC, 2020 WL 2042331, at *3 (W.D. Pa. Apr. 28, 2020) (to find a plaintiff's claims "arise out of or relate to" defendant's contacts with the forum state, a plaintiff must allege a "closer and more direct causal connection than that provided by the but-for test."). This alternative test is not satisfied for the same reasons as the *Calder* test: JetBlue's forum-based activities are not the basis of his claims arising from perusing the Website. *See Patchen v. McGuire*, Case No. CV 11–5388, 2012 WL 4473233, at *6 n.10 (E.D. Pa. Sept. 27, 2012) ("[G]enerally a plaintiff who cannot establish sufficient contacts under the effects test will also fail under the standard test."). "[T]he

plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 286, 290–91 (2014) (no jurisdiction where plaintiffs' injury would have arisen "wherever else they might have traveled"). Plaintiff alleges no connection between his claims against JetBlue and Pennsylvania apart from his own visit to the Website, which does not establish jurisdiction.

## IV.   **PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE ADA**

### A.   **Preemption Under the Airline Deregulation Act**

The ADA includes a broad preemption clause: "[e]xcept as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The ADA reflects Congress's determination that "maximum reliance on competitive forces would best further efficiency, innovation, and low prices as well as variety and quality of air transportation services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992).

The ADA's express preemption provision "has a *broad* scope" and "an expansive sweep," and the "ordinary meaning of these words . . . express a *broad* pre-emptive purpose." *Morales*, 504 U.S. at 383–84 (emphasis added). In *Morales*, the Supreme Court defined the phrase "related to" under the ADA to mean "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into associate with or connection with." *Morales*, 504 U.S. at 383; *see Gary v. Air Group, Inc.*, 397 F.3d 183 (3d Cir. 2005). "A majority of the circuits to have construed 'service' have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink—matters incidental to and distinct from the actual transportation of passengers." *Panitch v. Cont'l Airlines*, No. CIV.A 06-3611, 2008 WL 906240, at *5 (D.N.J. 2008) (collecting authorities; finding the Third Circuit follows the majority); *see David v. United Cont'l Holdings,*

*Inc.*, 2015 WL 7573204, at \*3 n.6 (D.N.J. Nov. 24, 2015) ("[T]his Court follows the . . . First, Second, Fourth, Fifth, Seventh, and Eleventh Circuits, and adopts a broad definition of 'service.'"). "The requisite connection exists either where the law expressly references the air carrier's prices, routes, or services, or has a forbidden significant effect upon the same." *Gary*, 397 F.3d at 186.

### B.      Plaintiff's Claims are Preempted

Courts around the country have found that the ADA preempts state privacy claims like those Plaintiff asserts here. For example, in *People ex rel. Harris*, 247 Cal. App. 4th 884, the court held that the ADA preempted state claims based on Delta's alleged failure to bring its mobile application into compliance with California's Online Privacy Protection Act. *Id.* at 900-906. The court reasoned that the "mobile application [was] selected and designed to facilitate access to the airline's services," and thus "is a marketing mechanism 'appropriate to the furnishing of air transportation services.'" *Id.* at 901 (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995)). Plaintiff's claims would have a "significant impact upon the airline's ability to market its product through its Fly Delta mobile application, and, hence, a significant impact upon the fares they charge," and were therefore preempted *Delta*, 247 Cal. App. 4th at 903.

In *In re Am. Airlines, Inc.*, the court held that state privacy claims were preempted where, as here, plaintiffs' information allegedly obtained or used without permission was collected "from customers when taking reservations or selling air transportation." 370 F. Supp. 2d 552, 561 (N.D. Tex. 2005). The Court held that imposing privacy claims against the airline for information collected in the course of furnishing tickets would "effectively dictate" how American could manage its ticketing and reservations functions in violation of the purpose of the ADA. *Id*. at 564. In *Kislov v. Am. Airlines, Inc.*, No. 17 C 9080, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022), the court held that claims under the Illinois Biometric Information Privacy Act arising from American's alleged use of interactive voice software to create unauthorized "voiceprints" were

preempted. *Id*. at *3. There, plaintiffs' biometrics were allegedly collected when they called American's customer service hotline, and enforcement of Illinois's biometric privacy law would "impose some obligation on an airline-defendant with respect to conduct that, when properly undertaken, is a service," and, therefore, the claim was preempted. *Id*. at *4.

Like the mobile application in *Delta*, the reservations plaintiffs made in *In re Am. Airlines*, and the customer service line in *Kislov*, the Website where Plaintiff claims his communications were acquired without his permission is a core part of JetBlue's "services." Customers can search for flight and travel information, make flight reservations, and buy tickets on the Website. FAC ¶¶ 10, 74. Indeed, Plaintiff claims JetBlue allegedly acquired his interactions without permission when he used the Website to browse for flights. FAC ¶¶ 66-57; RJN, Ex. 5. Any communications Plaintiff had with JetBlue on the Website would pertain to those core services (RJN, Ex. 5), and enforcement of Plaintiff's PWESCA and privacy claims would have a "significant impact upon the airline's ability to market its product through its [website], and, hence, a significant impact upon the fares they charge." *Delta*, 247 Cal. App. 4th at 903. "Congress surely intended to immunize airlines from a host of potentially-varying state laws and state-law causes of action that could effectively dictate how they manage personal information collected from customers to facilitate the ticketing and reservation functions that are integral to the operation of a commercial airline." *In re Am. Airlines, Inc.*, 370 F. Supp. 2d at 564.

## V.    PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT

### A.    Constitutional Requirements for Standing

To establish "the irreducible constitutional minimum" of standing, plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (cleaned up).

"[A]n injury in law is not an injury in fact." *Ramirez*, 141 S. Ct. at 2205. "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id.* at 2204. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.*

In *Ramirez,* the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id. Ramirez* represented a marked departure from prior Supreme Court precedent, which had posited that "the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 134 (3d Cir. 2015); *but see Yaw v. Delaware River Basin Comm'n*, 49 F. 4th 302, 321 (3d Cir. 2022) ("plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement'" (quoting *Spokeo*, 578 U.S. at 341).

### B.      Plaintiff Has Not Established a Concrete Harm

"On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing . . . ." *Phila. Metal Trades Council v. Konnerud Consulting W., A.S.*, No. 15-CV-5621, 2016 WL 1086709, at *1 (E.D. Pa. Mar. 21, 2016). In a facial challenge to standing, courts apply the same standard as a motion to dismiss under Rule 12(b)(6), discussed below. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).

Plaintiff's claims arise from JetBlue's use of session replay software to record his interactions on the Website. FAC ¶¶ 1, 54. Plaintiff only browsed for flights by hovering his mouse and clicking on options departing from Pittsburgh's airport. *Id.* ¶ 56. He claims that the recording of his keystrokes, mouse movements and clicks, pages viewed, information entered online and location was done without

his consent in violation of PWESCA and constituted an invasion of his privacy under Pennsylvania common law. *Id*. ¶¶ 49, 83-116. These allegations do not establish an Article III injury in fact.

Under *Ramirez*, simply alleging the elements of PWESCA is insufficient to establish an Article III injury in fact. *Ramirez*, 141 S. Ct. at 2205.[3] *Nyanhongo v. Credit Collection Services*, CV 20-6380, 2021 WL 1546233, at *3 (E.D. Pa. Apr. 20, 2021) (sending letter in an envelope that contained the phrase "PERSONAL & CONFIDENTIAL" did not establish Article III injury in fact because plaintiff "[did] not clearly allege facts explaining how the information on the envelope conveyed private information, . . .or otherwise caused a concrete injury"). Similarly, conclusory allegations of "mental anguish" or lost "economic value" in information are not presumed true. *White*, 969 F. Supp. at 323; *see* FAC ¶¶ 112-115; *Barclift v. Keystone Credit Services, LLC*, 5:21-CV-04335, 2022 WL 1102122, at *4 (E.D. Pa. Apr. 13, 2022) (allegations that unauthorized persons *could* have viewed plaintiff's personal information not sufficient to establish her standing).

The recent opinion in *Massie v. Gen. Motors LLC*, No. 21-CV-787, 2022 WL 534468 (D. Del. Feb. 17, 2022), is instructive to Plaintiff's lack of concrete harm. In *Massie*, plaintiffs alleged that General Motors used session replay software to collect their "mouse movements, clicks, and keystrokes, producing 'video-accurate renders of real visits'" to the website, in violation of the federal Wiretap Act and its California analog. *Id.* at *1, *2. Defendants moved to dismiss these claims for lack of Article III standing. *Id.* at *4-5. The Court held that even if a wiretapping claim could be analogous to a common law invasion of privacy, "a claim of invasion of privacy requires an intrusion upon something over which a person has a reasonable expectation of privacy. 'Eavesdropping' on communications that do not involve personal information, personally

---

[3] Here, Plaintiff has not even alleged a PWESCA or invasion of privacy claim, because the data elements he alleges JetBlue acquired are not the contents of a communication under established law, and he does not allege that he provided anything objectively private to JetBlue. *See infra*, § 4(B)(4).

identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury." *Id.* at *5. As in *Massie*, Plaintiff has not alleged that he provided anything to JetBlue that could identify him. FAC ¶¶ 56-57. He has no expectation of privacy in non-identifying information used to generate flight options that did not even culminate in a purchase. *Massie*, 2022 WL 534468, at *5.

Similarly, although Plaintiff contends that the use of session replay could have "expose[d] visitors to identity theft, online scams, and other privacy threats," FAC ¶ 37, he does not allege that he has personally been put at risk or suffered a privacy threat. Plaintiff's speculation that harm might result from some future data "leak" or breach cannot create standing. *Id.* ¶¶ 38-41. A "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quotation marks and citation omitted). Here, Plaintiff does not allege that he provided anything sensitive to JetBlue— hovering over flight options is certainly not data that could lead to identity theft. FAC ¶ 37. *See, e.g.*, *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) (risk of identity theft based on stolen data not "certainly impending" because the data included only name and driver's license number that could not be used to steal money or identity). Plaintiff has alleged at most a bare procedural violation, which is insufficient under *Ramirez* and *Spokeo*.

## VI.   PLAINTIFF HAS FAILED TO STATE A CLAIM

### A.   Standard for Ruling on Motions to Dismiss Pursuant to Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Realogichr, LLC v. Cont'l Cas. Co.*, No. 22-CV-01573, 2022 WL 17904245, at *1 (W.D. Pa. Dec. 23, 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Realogichr, LLC*, 2022 WL 17904245, at *1 (quoting *Iqbal*, 556 U.S. at 678). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Realogichr, LLC*, 2022 WL 17904245, at *1 (quoting *Iqbal*, 556 U.S. at 678). "[A] court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments." *Realogichr, LLC*, 2022 WL 17904245, at *1 (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 & n.8 (3d Cir. 1997)). Allegations contradicted by matters subject to judicial notice are not accepted as true. *See Gupta v. Wipro Ltd.*, 749 F. App'x 94, 97 (3d Cir. 2018) .

**B.    Plaintiff Fails to Allege a Plausible Violation of PWESCA**

Plaintiff's barebones complaint is not sufficient under *Iqbal* and *Twombly* because Plaintiff fails to allege that: (1) JetBlue used a *device* to acquire his communications; (2) the *contents* of his communications were intercepted; (3) JetBlue acquired his communications *contemporaneous with transmission*; or (4) he had any *reasonable expectation of privacy* in information he provided on JetBlue's Website. *See* 18 Pa. Cons. Stat. §§ 5702, 5703.

**1.    Session Replay Software is Not a Device Under PWESCA.**

JetBlue's alleged use of session replay software on its Website is not actionable because it is not a "device" under the PWESCA. *See* 18 Pa. Cons. Stat. § 5702. Section 5702 defines an "electronic, mechanical or any other device" as "any device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication." Interpreting these words according to "common and approved usage," as required under Pennsylvania law, *Commonwealth v. Hart*, 28 A.3d 898, 908 (Pa. 2011), a "device" is tangible; it does not encompass intangible software code.

Although Pennsylvania courts have not yet decided the issue, other courts have concluded that a "device" under similar wiretapping statutes only encompasses something *tangible*. *See*

16

*Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d 457, 462-463 (D. Md. 2015) (holding that the "most natural reading" of a "device" is something like a "piece of equipment"). Black's Law Dictionary, defines "device" as "[a] mechanical invention" that may be "an apparatus or an article of manufacture," and directs readers to the term "machine" in the definition of "apparatus." Black's Law Dictionary (11th ed. 2019) (defining "machine" as "[a] device or apparatus consisting of fixed and moving parts"); *see Hart*, 28 A.3d at 909 (statutory meaning of a term "may be ascertained by examining its dictionary definition"). "In defining a statutory term," Pennsylvania courts "strive to determine its meaning at the time the General Assembly enacted the legislation," consulting dictionary definitions at the time the legislation in question was enacted. *Commonwealth v. Gamby*, 283 A.3d 298, 307 n.11 (Pa. 2022).

Consistent with the plain meaning of the statutory language, countless courts have held that software is not a device under analogous wiretapping statutes. *See, e.g.*, *Potter v. Havlicek*, No. 06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal wiretap claim because "the word 'device' does not encompass software"); *Jacome*, 2021 WL 3087860 at *5 ("Plaintiff fails to allege in the first instance that the session replay software at-issue is a 'device or apparatus which can be used to intercept a wire, electronic, or oral communication'"); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (same); *Goldstein v. Luxottica of Am., Inc.*, No. 21-CV-80546, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4125357 (Sept. 9, 2021) (same).

None of the cases cited by Plaintiff actually hold that software is a "device" within the meaning of any wiretapping statute. *See* FAC ¶ 93. *United States v. Barrington*, 648 F.3d 1178 (11th Cir. 2011), construes the term "access device" in U.S.S.G. § 2B1.1(b)(10)(B) and related

legislation, *not* the PWESCA or Federal Wiretap Act. *Id.* at 1200-02. *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), does not address the definition of a "device," but only whether communications were contemporaneously intercepted—whether the underlying software was a "device" was not before the court. *See generally id.* at 630,. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), did not address whether software is a device under the Federal Wiretap Act, but only the "ordinary course of business" exemption under 18 U.S.C. § 2510(4). *See id.* at 1084-87. *Klumb v. Goan*, 884 F. Supp. 2d 644 (E.D. Tenn. 2012), also does not address the definition of a "device," but only whether a program that re-routes emails constitutes an interception. *Id.* at 660. Finally, *Shefts v. Petrakis*, No. 10-CV-1104, 2012 WL 4049484 (C.D. Ill. Sept. 13, 2012), does not address the definition of a device, but only whether under the Federal Wiretap Act an unlawful interception must impact interstate commerce. *See id.* at *8.[4]

The Court should not unilaterally amend PWESCA to apply to technologies that are not encompassed by the plain language of the statute. *Gamby*, 382 A.3d at 307 n.11. Plaintiff has not alleged that JetBlue used a "device," and his PWESCA claim should be dismissed.

### 2.    Plaintiff Did Not Allege That JetBlue Captured Any "Contents."

Section 5702 of the PWESCA defines "contents" of a communication as including "any information concerning the *substance, purport, or meaning of that communication*." (emphasis added). Schnur alleges that JetBlue acquired his "mouse movements, clicks, keystrokes . . . URLs of web pages visited, and/or other electronic communications" when he "us[ed] his mouse to hover and click on certain flight options" to and from Pittsburgh on the Website. FAC ¶¶ 1, 56. Plaintiff alleges that "Fullstory . . . records all website visitor actions, including information typed by the

---

[4] The Third Circuit has not held that software is a "device" under PWESCA. The Third Circuit has once assumed without deciding that software could qualify as a device because the issue was not before it on appeal. *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 n.8 (3d Cir. 2022). The district court in *Popa* expressly declined to address the issue. *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 116-17 (W.D. Pa. 2019).

website users while on the website. Such information can include names, emails, phone numbers, addresses, social security numbers, date[s] of birth, and more . . . ." FAC ¶ 46.[5]

Numerous courts have held that the data Plaintiff claims JetBlue acquired is not the "contents" of a communication. "[M]ouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff . . .[are] precisely the type of non-record information that courts consistently find do not constitute contents . . . because it does not convey the substance or meaning of any message." *Jacome*, 2021 WL 3087860, at *4 (collecting authorities); *see Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (names, addresses, customer identities, or geolocation not "contents"). Plaintiff attempts to characterize this non-actionable information as "contents" by contending that JetBlue learned he had "hover[ed] and click[ed] on flight options" to and from Pittsburgh, FAC ¶ 56, but that is just another way of saying that JetBlue learned his mouse clicks and search terms on the Website, which is not actionable. *Jacome*, 2021 WL 3087860, at *4; *Goldstein*, 2021 WL 4093295, at *2; *see Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021).

### 3.  Plaintiff Has Not Alleged an Interception.

Section 5703(1) of PWESCA only makes it unlawful to "[i]ntentionally *intercept*[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept any wire, oral, or electronic communication." (emphasis added). *See* 18 Pa. Cons. Stat. § 5702.[6] "Every circuit court to have considered the matter has held that an 'intercept' under the [Federal Wiretap Act] must occur contemporaneously with transmission." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004); *see United States v. Steiger*, 318 F.3d

---

[5] Plaintiff's asserted legal conclusion that this information constitutes "electronic communications" is not true. *See, e.g.*, *RealogicHR, LLC*, 2022 WL 17904245, at *2 ("a court need not credit bald assertions").
[6] The Federal Wiretap Act defines "intercept" identically. *See* 18 U.S.C. § 2510(4).

1039, 1048–49 (11th Cir. 2003) ("[W]e hold that a contemporaneous interception—i.e., an acquisition during 'flight'—is required to implicate the Wiretap Act").

Plaintiff does not allege any facts demonstrating that his electronic communications were intercepted contemporaneously with transmission. He merely concludes that "Plaintiff's and Class members' electronic communications are intercepted contemporaneously with their transmission," FAC ¶ 97, and in "real time," *e.g.*, *id.* ¶ 52. But just "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [JetBlue] is intercepting [Plaintiff's] data in transit." *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also Rosenow v. Facebook, Inc.*, No. 19-cv-1297, 2020 WL 1984062, at *7 (S.D. Cal. 2020) (allegation that defendant used an "algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" conclusory and failed to state a claim); *Quigley v. Yelp, Inc.*, No. 17-cv-03771, 2018 WL 7204066, at *4 (N.D. Cal. 2018) (dismissing Wiretap claims where plaintiff did not "allege with particularity how or when defendant became aware of his communications").

Plaintiff's only non-conclusory allegation regarding how session replay works states that it sends "code" "in the form of 'event' data to a designated third-party server. Typically, the server receiving the event data is controlled by the third party that wrote the Session Replay Code, rather than the owner of the website where the code is installed." FAC ¶ 25. But case law holds that an unauthorized acquisition from a server supporting a website, as Plaintiff appears to claim occurred here, is an acquisition from electronic storage, *not* an interception. *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. 2001) (text messages relayed without permission after receipt not intercepted), *aff'd*, 837 A.2d 1163 (Pa. 2003); *see Lindsay-Stern v. Garamszegi*, No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948, at *4 (C.D. Cal. Oct. 13, 2016) ("Caselaw generally

stands for the proposition that once a[ communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible.").

4.      Plaintiff Had No Reasonable Expectation of Privacy.

To violate PWESCA, an "individual must possess a legitimate expectation of privacy in the area searched." *Proetto*, 771 A.2d at 830. "An expectation of privacy is present when the individual's conduct exhibits an actual expectation of privacy which is recognized by society as reasonable." *Id.*

Here, it is not plausible that Plaintiff reasonably expected the mouse clicks, keystrokes, pages and content viewed, and flight options perused was private. Pennsylvania courts have held that "[a]ny reasonably intelligent person, savvy enough to be using the Internet" knows that communications online "are received in a recorded format, by their very nature," which demonstrates that there is no reasonable expectation of privacy in basic online interactions. *Proetto*, 771 A.2d at 829 (no reasonable expectation of privacy in emails that could be "forward[ed] to anyone"); *see Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (citing *Proetto* with approval). Other courts have rejected similar privacy claims arising from interactions on a website, because online tracking of non-substantive information is no different from using a security camera to record a party's presence at a commercial location. *Goldstein,* 559 F. Supp. 3d at 1321 ("[T]his mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store."). "[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-744 (1979). Nor does Plaintiff allege with facts that he provided sensitive or confidential information over which an expectation of privacy would attach. His PWESCA claim must be dismissed.

5.      JetBlue Was a Direct Recipient of Plaintiff's Communications.

21

As a direct recipient of any alleged communication on the Website, JetBlue cannot be liable for wiretapping under PWESCA as a matter of law. *See Proetto*, 771 A.2d at 831 ("[W]here a party receives information from a communication as a result of being a direct party to the communication, there is no interception."). JetBlue acknowledges that the Third Circuit has ruled that there is no direct party exception outside of the law enforcement context. *Popa*, 52 F.4th at 127-28. To preserve the issue for appeal, JetBlue submits that the Third Circuit was incorrect in this interpretation of PWESCA. The Pennsylvania legislature did not limit Pennsylvania law that has long recognized the direct-party exception to liability when it revised PWESCA in 2012, as evidenced by the continued recognition of the direct-party exception outside of the law enforcement context. *See Commonwealth v. Diego*, 119 A.3d 370 (Pa. Super. Ct. 2015).

### D.     Plaintiff Fails to Plausibly Allege Intrusion Upon Seclusion

To state a claim for intrusion upon seclusion, Plaintiff must show that JetBlue (1) intentionally; (2) "invaded [plaintiff's] privacy"; (3) by "some . . . form of investigation or examination into [p]laintiff's private concerns." *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 571-72 (W.D. Pa. 2015) (quoting *Harris ex rel. Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. 1984)). The "intentional intrusion upon the seclusion of [plaintiff's] private affairs . . . [must be] substantial and highly offensive to a reasonable person." *Gabriel*, 124 F. Supp. 3d at 572 (citation omitted). To be actionable, "the information disclosed would . . . cause[] mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Pacitti v. Durr*, No. 05-CV-317, 2008 WL 793875, at *26 (W.D. Pa. Mar. 24, 2008), *aff'd*, 310 F. App'x 526 (3d Cir. 2009).

Plaintiff has not plausibly alleged that he had "a reasonable expectation of privacy" in his interactions on the Website. Pennsylvania courts have long rejected such an expectation in Internet communications—even emails that by their nature have a potential to be more private than the ubiquitous website browsing Plaintiff alleges here. *Proetto*, 771 A.2d at 829 (no reasonable

expectation of privacy in emails); *see Byrd*, 235 A.3d at 319 (citing *Proetto* with approval); *see also Gabriel*, 124 F. Supp. 3d at 572 (dismissing an intrusion upon seclusion claim where plaintiff failed to adequately allege that defendant invaded "[p]laintiff's private concerns").[7] Countless courts have found that consumers have no expectation of privacy in communications voluntarily provided on a commercial website. *Macon*, 472 U.S. at 469; *Goldstein,* 559 F. Supp. 3d at 1321.

Plaintiff also has not alleged that any intrusion was highly offensive. Although Plaintiff alleges that JetBlue *can* capture "intimately personal facts," FAC ¶ 107, he does not allege that *he provided any* on the Website—only that he "hover[ed] and click[ed] on certain flight options." FAC ¶ 56. The non-descript "mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's navigation and interaction through the website," FAC ¶ 26, on a public-facing commercial air carrier's website are not the type of information that "cause[] mental suffering, shame, or humiliation to a person of ordinary sensibilities" if collected. *Pacitti*, 2008 WL 793875, at *26.

### E.    Plaintiff Consented to JetBlue's Recording

A plaintiff has no claim under PWESCA "where all parties to the communication have given prior consent to such interception." 18 Pa. Cons. Stat. § 5704(4). Courts have likewise held that an invasion of privacy claim does not exist where a party consented to the conduct at issue. *See Jevic v. Coca Cola Bottling Co. of N.Y., Inc.*, No. 89-CV-4431, 1990 WL 109851, at *9 (D.N.J. June 6, 1990). Under Pennsylvania law, "prior consent can be demonstrated when the person being recorded *knew or should have known*, that the conversation was being recorded. This standard is

---

[7] Plaintiff's conclusory allegation that he had "an objective, reasonable expectation of privacy in [his] website communications," FAC ¶ 107, is not presumed true. *See, e.g.*, *RealogicHR*, 2022 WL 17904245, at *2.

The articles Plaintiff cites are not a substitute for facts. Since articles are not facts (and, in some cases, do not even purport to consider facts and instead address only theory) they may not sustain his defective pleading. *See Waste Mgmt. of N.J., Inc. v. Mercer Cnty. Imp. Auth.*, No. A-2287-12T3, 2014 WL 6390571, at *6 (N.J. Super. Ct. App. Div. Nov. 18, 2014) ("Scholarly articles are a poor substitute for facts.").

one of a reasonable person, and not proof of the subjective knowledge of the person being recorded . . . ." *Byrd*, 235 A.3d at 319 (emphasis added). Plaintiff's claims fail here because he affirmatively allowed JetBlue to use FullStory's software to record his interactions before he visited the Website. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022) ("if someone consents to the interception of her communications with a website, the [PWESCA] does not impose liability.").

Before Plaintiff could use the the Website for, he was presented with a banner that: (1) informed him "By clicking 'Accept all cookies', you consent to the use of all cookies, unless you have disabled them"; (2) gave him the option to "Accept all cookies" or "Manage cookies"; and (3) directed him to JetBlue's Privacy Policy. RJN, Ex. 1. Plaintiff was *required* to "Accept all cookies" or "Manage cookies." *Id*. The recording Plaintiff complains of could have only occurred if he accepted FullStory's cookie by either clicking "Accept all cookies," or electing to "Manage cookies," and not turning FullStory's functional cookie "off." RJN, Exs. 1-3. By failing to opt out, Plaintiff gave his express consent to JetBlue tracking his website interactions as disclosed in JetBlue's Privacy Policy linked in the banner that Plaintiff acknowledged. *Id.*, Ex. 4 at 2.

Courts have found consent to allegedly unlawful eavesdropping where a plaintiff is presented with similar fulsome disclosures before a communication is recorded. For example, in *Byrd*, the Pennsylvania Supreme Court held that an inmate consented to the recording of his communications where "before an inmate and visitor can converse with one another, a recording stating that the visit 'may be monitored or recorded' is played," and the inmate thereafter began to speak. *Byrd*, 235 A.3d at 317. In *Jacome*, the Florida Superior Court held that a website visitor consented to the use of session replay to record his communications where "upon first accessing the Website, Plaintiff was presented with a banner" "that explicitly warned him that 'by continuing to use [the] [W]ebsite, [Plaintiff] acknowledge[s] the use of cookies'—the functional equivalent

of calling a customer service line and hearing 'Your call is being recorded for quality assurance purposes.'" 2021 WL 3087860, at *7. "Given that Plaintiff had to affirmatively ex out of the cookie banner for it to no longer be visible on [JetBlue]'s Website, the Court is hard-pressed to find that Plaintiff was not aware that his interactions with the Website were being monitored." *Id.*

Plaintiff claims that JetBlue's banner was only implemented *after* he filed suit, based on "information and belief." FAC ¶ 72. This allegation, added solely to avoid dismissal, is not presumed true. "[T]he Third Circuit permits allegations based on information and belief where [1] it can be shown that the requisite factual information is peculiarly within the defendant's knowledge," and [2] "plaintiffs [do not] use merely boilerplate and conclusory allegations." *Malone*, 2018 WL 827433, at *3. Plaintiff's boilerplate claim that there was no banner is not in JetBlue's exclusive knowledge—if Plaintiff truly browsed the Website before he sued. FAC ¶ 57.

But even if the Court accepts Plaintiff's manufactured allegation, Pennsylvania courts have long held that "[a]ny reasonably intelligent person, savvy enough to be using the Internet" knows that communications online "are received in a recorded format, by their very nature." *Proetto*, 771 A.2d at 829. "By the very act of sending a communication over the Internet," "the party expressly consents to the recording of the message." *Proetto*, 771 A.2d at 829; *see Byrd*, 235 A.3d at 320 (same); *Diego*, 119 A.3d at 377 (consent may be "surmised from the very nature of the selected means of transmission"). Plaintiff, therefore, plausibly consented to any alleged recording by communicating with JetBlue online. *Proetto*, 771 A.2d at 829. Plaintiff's prior express consent— whether through JetBlue's banner or based on a reasonable person's understanding of non-confidential Internet communications—bars his claims. *Popa*, 52 F.4th at 132.

## VII.   **CONCLUSION**

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated: March 31, 2023                    Respectfully submitted,

**Greenberg Traurig, LLP**

*/s/ Joel Eads*
**Joel Eads, Esq.** (PA ID No. 72786)
1717 Arch Street, Suite 400
Philadelphia, PA 19103
(T): 215 988-7856
(F): 215 988-7801
Joel.Eads@gtlaw.com

**Jacob D. Bundick, Esq.** (Admitted Pro Hac
Vice)
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
(T): (702) 792-3772
(F): (702) 792-9002
bundickj@gtlaw.com

**Rebekah S. Guyon, Esq.** (Admitted Pro Hac
Vice)
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
(T): (310) 586-7716
(F): (310) 685-7800
rebekah.guyon@gtlaw.com


*Attorneys for Defendant Jetblue Airways
Corporation*